# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**JONATHAN SCOTT ANDERSON,**

        **Plaintiff,**

        **-vs-**                   **Case No. 06-C-0782**

**WILLIAM POLLARD, et al.,**

        **Defendants.**

---

# DECISION AND ORDER

---

Plaintiff, Jonathan Scott Anderson, filed this *pro* se civil rights complaint under 42 U.S.C. § 1983 and is proceeding *in forma pauperis*. Currently pending are the plaintiff's motion to amend the complaint, the defendants' motion to amend the caption, the defendants' motion to dismiss and the plaintiff's motion for appointment of counsel.

## I. PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

The plaintiff has requested leave to amend his complaint to substitute Dr. Richard Heidorn for defendant Dr. John Doe. Rule 15(a) of the Federal Rules of Civil Procedure states that leave to file an amended complaint "shall be freely given when justice so requires." Additionally, the Court of Appeals for the Seventh Circuit has held that, "[w]hen the substance of a *pro se* civil rights complaint indicates the existence of claims against individual officials not specifically named in the caption of the complaint, the district

court must provide the plaintiff with an opportunity to amend the complaint." *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996).

By order of November 7, 2006, the plaintiff was permitted to proceed on an Eighth Amendment medical care claim against defendant Dr. John Doe. The plaintiff asserts that since filing the complaint, he has identified Dr. Richard Heidorn as defendant Dr. John Doe. The defendants do not object to the plaintiff's request. Therefore, the plaintiff's motion to amend the complaint to substitute Dr. Richard Heidorn for defendant Dr. John Doe will be granted.

## II. DEFENDANTS' MOTION TO AMEND THE CAPTION

On August 14, 2007, the defendants filed a motion to amend the caption to reflect that RN Lemens has been dismissed from this action. Review of the docket in this case reveals that RN Lemens was dismissed as a party on November 7, 2006, because the complaint failed to assert that RN Lemens was personally involved in the alleged wrongdoing. However, the caption has not been changed to show that RN Lemens was dismissed and, as of today, RN Lemens remains listed as a party. As a result, on April 11, 2007, the Marshal issued a summons for RN Lemens, which was served on "Kathy Burke - Warden's Secretary." (*See* Docket # 40).

In light of the foregoing, the court is persuaded that the caption should be amended to reflect that RN Lemens was dismissed from this action on November 7, 2006,

2

and, therefore, the April 11, 2007, summons was issued in error. Accordingly, the defendants' motion to amend the caption will be granted.

### III. DEFENDANTS' MOTION TO DISMISS

On January 16, 2007, the defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which is now fully briefed and ready for resolution.

**A.**       **Preliminary Matters**

In support of their motion to dismiss, the defendants submit the affidavit of Thomas J. Gozinske, Corrections Complaint Examiner for the Wisconsin Department of Corrections and Wisconsin Department of Corrections Inmate Complaint Review System (ICRS) grievance records. When ruling on a Rule 12(b)(6) motion to dismiss, the court must focus on the pleadings of the parties. If "matters outside the pleadings are presented to and not excluded by the court" in connection with a motion to dismiss for failure to state a claim, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56." Fed. R. Civ. P. 12(b).

In this case, the defendants have filed an affidavit in support of their motion. Thus, the motion to dismiss is properly treated as a motion for summary judgment. However, a district court cannot properly rule upon a motion for summary judgment without providing the opposing party a "reasonable opportunity" to contradict the material facts asserted by the movant. *Lewis v. Faulkner*, 689 F.2d 100, 101 (7th Cir. 1982). This means

3

that a *pro se* prisoner, who is a plaintiff in a civil case, is entitled to receive notice of the consequences of failing to respond to a motion for summary judgment or to a motion to dismiss supported by affidavits. *Id*.

In present action, counsel for the defendants provided the plaintiff with the required notice statement. The plaintiff was also provided with the text of the Federal Rules of Civil Procedure 56(e) and (f), as well as Civil Local Rules 7.1, 56.1 and 56.2 (E.D. Wis.). In addition, the plaintiff received an extension of time to respond to the defendants' motion. Hence, the court finds that the plaintiff has been given notice and a fair opportunity to present counter-affidavits or other evidence. The court will now address the defendants' motion for summary judgment.

**B.      Standard of Review**

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis deleted). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id*. For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." *Id*.

4

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986), courts should act with caution in granting summary judgment, *Anderson*, 477 U.S. at 255. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. *Id*. at 248.

The moving party bears the initial burden of demonstrating that she is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323. Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the non-moving party's case, the moving party may satisfy her initial burden simply by pointing out the absence of evidence. *Id*. at 325. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. *Id*. at 322-23. Neither party may rest on mere allegations or denials in the pleadings, *Anderson*, 477 U.S. at 248, or upon conclusory statements in affidavits. *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989).

## C.        Factual Background

The plaintiff was incarcerated at Green Bay Correctional Institution (GBCI) at all times relevant. The defendants, William Pollard, Peter Ericksen, Sarah Cooper, Mark Zimonick, Martha Breen, Dr. Todd L. Hamilton, Jodene Perttu, Cynthia Thorpe, William D. Swiekatowski, Mark Le Satz, Kim M. Kaphingst, Jonathan M. Bates, Chad M. DeBroux,

5

Victor M. Figueroa, Gene R. Lannoye, Michael T. Lehman, Peter J. Walton, James A. Gleason, Jeananne Hertel Greenwood, Jean A. Lutsey, Stephanie L. Sequin, Travis Bouchonville, Travis Caul, Sergeant Hammer, Glen Ripley and Dr. Richard Heidorn, are GBCI employees.

From March 2, to March 4, 2005, the plaintiff experienced "suicidal intentions" and cut his wrists. (Complaint [Compl.] at 6). When defendants Cooper, Swiekatowski, Hammer, Kaphingst, Breen, Zimonick, LeSatz, Bates, DeBroux, Caul and Figueroa "noticed and questioned [the] plaintiff of his actions, " he replied that "he was going to kill himself." *Id*. In response, the defendants "sinisterly laughed" and walked away. *Id*. They did not retrieve mental health staff to treat the plaintiff nor did they place him in observation status. *Id*.

On April 4, 2005, defendant Lannoye discovered that the plaintiff had in his possession "a mass quantity of Lithium." *Id*. Therefore, defendant Lannoye moved the plaintiff's blankets and personal belongings to another cell. *Id*. Defendant Lannoye, however, did not retrieve mental health staff to treat the plaintiff nor did he question the plaintiff's motives. *Id*. Instead, defendant Lannoye issued the plaintiff a conduct report. *Id*. Then, defendant Lutsey, who confirmed that the plaintiff was to receive Lithium as a medication, allowed the plaintiff to continue receiving such medication even after it was clear that he was collecting pills. *Id*. As a result of receiving the conduct report, defendants Swiekatowski and Erickson put the plaintiff on "tether to door for medication" status. *Id*.

6

On April 10 and April 11, 2005, the plaintiff cut his forearm again. *Id.* He wrote "numerous requests to Dr. Breen and Dr. Hamilton explaining [his] suicidal tendencies," but they were ignored for weeks on end. *Id.* The plaintiff avers that he has "still yet to receive mental health" care. *Id.* at 7.

On April 14, 2005, the plaintiff "once again managed to save 34 pills of Lithium while being on tether to door for medication." *Id.* Staff "had plenty of opportunities to intervene but failed to do so." *Id.* After consuming the 34 pills, the plaintiff was rushed to the hospital to undergo charcoal ingestion and dialysis to clean out his blood stream. *Id.*

From April 15, to April 18, 2005, the plaintiff was placed in observation status. *Id.* He "clearly verbalized to Dr. Martha Breen" that he was "depressed for a few weeks" and "upset at staff for ignoring + laughing at me." *Id.* Defendant Breen did nothing to prevent these "egocentricly (sic) heinous acts by staff." *Id.*

On April 21, 2005, the plaintiff was passed up during medication distribution. *Id.* Therefore, he pushed the medical emergency button three times "to request his stomach medication he was taking due to his pill overdose." *Id.* However, the plaintiff's medication was not delivered until three hours later and defendant Bates turned off the plaintiff's medical emergency button for the remainder of the second shift. *Id.* at 7-8.

On April 18, 2005, defendant Swiekatowski ordered that the plaintiff's cell be searched twice per week as a result of his overdose. *Id.* at 7. However, on May 8, 2005, the plaintiff filed an administrative grievance complaining that staff were failing to conduct the

twice weekly cell searches. *Id*. at 8. Then, on May 10, 2005, the plaintiff filed an inmate complaint because defendant John Doe, Sequin, Thorpe and Hertel "halted" his stomach medication, which left him in agony. *Id*.

On June 19, and July 29, 2005, the plaintiff was not given enough medication to last through the weekend due to defendant Lutsey's deliberate indifference. *Id*. On various dates between July 21 and September 2, 2005, the plaintiff vomited blood due to severe stomach pain. *Id*. at 8 -9. He reported the problem to defendants Walton, Lehman, Bouchonville and Gleason, yet medical care was withheld and delayed. *Id*.

**D. Discussion**

The defendants contend that summary judgment should be entered in their favor because the plaintiff failed to exhaust administrative remedies. The Prison Litigation Reform Act of 1995 (PLRA) provides that,

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is a condition precedent to suit. *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002) (citing *Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999)). Failure to exhaust is not jurisdictional. *Greene v. Meese*, 875 F.2d 639, 643 (7th Cir. 1989). Rather, it is an affirmative defense that the defendant has

8

the burden of pleading and proving. *Jones v. Bock*, 127 S. Ct. 910, 919 (2007); *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999).

The PLRA exhaustion requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules. *See Woodford v. Ngo*, 126 S. Ct. 2378, 2382 (2006) (holding that prisoner does not satisfy exhaustion requirement by filing untimely or otherwise procedurally defective administrative grievances or appeals). In Wisconsin, an inmate must file a complaint with the inmate complaint examiner (ICE) with fourteen days after the occurrence giving rise to the complaint. Wis. Admin. Code §§ DOC 310.07(1) and 310.09(6). After reviewing and acknowledging each complaint in writing, the ICE either rejects the complaint or sends a recommendation to the "appropriate reviewing authority." Wis. Admin. Code §§ DOC 310.11(2) and 310.11(11).

The appropriate reviewing authority makes a decision within ten days following receipt of recommendation. Wis. Admin. Code § DOC 310.12(1). Within ten days after the date of the decision, a complainant dissatisfied with a reviewing authority decision may appeal that decision by filing a written request for review with the corrections complaint examiner (CCE). Wis. Admin. Code § DOC 310.13(1). The CCE then reviews the appeal and makes a recommendation to the Secretary of the Department of Corrections. Wis. Admin. Code § DOC 310.13(6). The Secretary may accept, adopt, or reject the correction

9

complaint examiner's recommendation, or return the appeal to the corrections complaint examiner for further investigation. Wis. Admin. Code § DOC 310.14(2).

### 1. Inmate complaint concerning March 2 to March 4, 2005.

The plaintiff alleges that, from March 2 to March 4, 2005, he was suicidal and the defendants failed to provide him with adequate mental health care. On March 10, 2005, the plaintiff filed an inmate complaint asserting: (1) he cut his wrist; (2) he told eleven staff members that he wanted to kill himself; and (3) these staff members did "absolutely nothing" in response to his complaints. (Affidavit of Thomas Gozinske [Gozinske Aff.] Ex. 1011). That same day, the ICE returned the complaint, unfiled, because it contained more than one issue in violation of Wis. Admin. Code § DOC 310.09(1)(e). (Gozinske Aff. Ex. 1012). Once advised of this deficiency, the plaintiff did not refile his complaint to attempt to comply with § 310.09(1)(e).

As discussed, the PLRA requires that the plaintiff complete the administrative review process in accordance with the applicable procedural rules. *See Woodford,* 126 S. Ct. at 2382; *Riccardo v. Rausch*, 375 F.3d 521, 253 (7th Cir. 2004)("Prisoners must follow state rules about the time and content of grievances."). The rules governing administrative exhaustion "come from the prison grievance systems themselves." *Strong v. David*, 297 F.2d 646, 649 (7th Cir. 2002).

In Wisconsin, inmate complaints must "[c]ontain only one issue, and shall clearly identify the issue. Wis. Admin. Code § DOC 310.09(1)(e). Prison officials are

10

required to return, and not process, inmate complaints that contain more than one issue. Wis. Admin. Code § 310.09(3).

In the present case, the plaintiff's March 10, 2005, inmate complaint was defective because it violated the prison procedural rule requiring inmate complaints to contain only one issue per complaint. *See Woodford*, 126 S. Ct. at 2382; *Riccardo*, 375 F.3d at 523. The court notes that the plaintiff now contends that this inmate complaint did not contain more than one issue. (Pl.'s Response at 2). However, the correct manner to raise such issue was by appealing the complaint through the ICRS, which the plaintiff neglected to do. Consequently, the plaintiff failed to properly exhaust his administrative remedies with respect to this claim.

### 2.    Inmate complaint concerning April 4, 2005.

The plaintiff contends that, on April 4, 2005, after discovering that he had in his possession a large amount of Lithium pills, defendant Lannoye issued the plaintiff a conduct report. The plaintiff further asserts that defendant Lutsey allowed him to continue receiving Lithum even after it was clear that he was collecting pills and defendants Swiekatowski and Erickson punished him with "tether to door for medication" for 30 days. The plaintiff did not file an inmate complaint regarding this issue, thereby initiating the ICRS process set forth in Wis. Admin. Code § 310.09. (Gozinske Aff. ¶ 78). Consequently, the plaintiff failed to properly exhaust his administrative remedies with respect to this claim.

### 3.    Inmate complaints concerning April 10 and 11, 2005.

11

**First Inmate Complaint**

The plaintiff submits that, after cutting his forearm on April 10 and April 11, 2005, Dr. Breen and Dr. Hamilton delayed providing him medical care for weeks. On April 12, 2005, the plaintiff filed Inmate Complaint Number GBCI-2005-11696, complaining that he had a big gash on his forearm and he was refused medical care. (Gozinske Aff. Ex. 1000 at 1). The complaint was rejected by the ICE on April 12, 2005, because it did not contain enough information to put the defendants on notice of the plaintiff's claim against them. (Gozinske Aff. Ex. 1001 at 3). That same day, the plaintiff was advised that he could appeal the ICE decision within 10 calendar days to the appropriate reviewing authority. *Id.* The plaintiff did not appeal the ICE's rejection. (Gozinske Aff. ¶ 24).

Exhaustion requires a prisoner to "take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2001). In Wisconsin, to exhaust his administrative remedies, an inmate dissatisfied with an ICE's decision is required to appeal to the decision to the appropriate reviewing authority. Wis. Admin. Code § DOC 310.11(6).

In the present case, the plaintiff did not appeal the ICE's dismissal of Inmate Complaint Number GBCI-2005-11696 as required under § 310.11(6). Therefore, he failed to properly exhaust his administrative remedies with respect to this inmate complaint.

**Second Inmate Complaint**

12

On April 13, 2005, the plaintiff filed an inmate complaint asserting that defendants Breen and Hamilton would not come to see him in segregation or respond to his letters. (Gozinske Aff. Ex. 1013 at 1). That same day, the ICE returned the complaint to the plaintiff and advised him that he needed to attempt to resolve the dispute with Dr. Schmidt before the complaint could be accepted. (Gozinske Aff. Ex. 1013 at 2).

Prior to accepting an inmate complaint, the ICE may direct the inmate to attempt to resolve the issue. Wis. Admin. Code DOC § 310.09(4). The plaintiff argues that Dr. Schmidt had "no segregation jurisdiction which was where plaintiff was housed at the time." (Pl.s' Response at 3). Unfortunately for the plaintiff, "[t]he potential effectiveness of an administrative remedy bears no relationship to the statutory requirement that prisoners first attempt to obtain relief through administrative procedures." *Massey*, 196 F.3d 727, 733 (7th Cir. 1999). Moreover, the plaintiff failed to refile the April 13, 2005, complaint, as he was advised to after consulting with Dr. Schmidt. *See* Wis. Admin. Code § DOC 310.09(4). Hence, the plaintiff failed to properly exhaust his administrative remedies with respect to this inmate complaint.

**4.    Inmate complaint concerning April 14 to April 18, 2005.**

The plaintiff avers that, after he overdosed on Lithium, he was placed on observation status from April 15 to April 18, 2005. While in observation status, the plaintiff complained to defendant Dr. Breen that he was depressed and upset at prison officials for ignoring and laughing at him, but defendant Dr. Breen did nothing to correct the officials'

13

behavior. The plaintiff did not file an inmate complaint relating to the events that occured between April 14 and April 18, 2005. (Gozinske Aff. ¶ 81). Consequently, the plaintiff failed to properly exhaust his administrative remedies with respect to this claim.

### 5. Inmate complaint concerning twice-weekly cell searches.

The plaintiff contends that defendant Swiekatowski ordered that his cell be searched twice per week as a result of his Lithium overdose, but staff failed to conduct the required searches. On May 9, 2005, the plaintiff filed Inmate Complaint Number GBCI-2005-14665, complaining that the segregation staff failed to strip search him every Monday and Thursday. (Gozinske Aff. Ex. 1002 at 1). The complaint was rejected on July 7, 2005, because the ICE found that there was no order in place requiring the plaintiff to be strip searched twice a week. (Gozinske Aff. Ex. 1002 at 2).[1] On July 8, 2005, the reviewing authority dismissed the complaint. (Gozinske Aff. Ex. 1002 at 3).

The plaintiff appealed the reviewing authority's decision on February 16, 2006. (Gozinske Aff. Ex. 1002 at 5-7). The CCE recommended that the appeal be dismissed because it was not filed within 10 calendar days of the ICE's decision. (Gozinske Aff. Ex. 1002 at 9). Then, on February 20, 2006, the Secretary adopted the CCE's dismissal recommendation. (Gozinske Aff. Ex. 1009 at 10).

The plaintiff concedes that he failed to timely appeal the dismissal of Inmate Complaint Number GBCI-2005-14665. However, he contends that he has attached copies

---

[1]The court notes that the plaintiff has submitted documentation that, for the time period from April 18 to May 18, 2005, his *cell* was to be searched every Monday and Thursday. (Compl. Ex. 33).

14

of all his appeals to the complaint and his untimeliness should be excused under *Spruill v. Gillis*, 372 F.3d 218, 235 (4th Cir. 2004), because he presented his inmate complaint to prison officials and appealed through the available procedures. (Pl.s' Response at 2). The court in *Spruill*, however, did not hold that an untimely inmate complaint will be accepted so long as the inmate takes all steps in the administrative review process. Rather, *Spruill* stated that, to exhaust under § 1997e(a), a prisoner: (1) is not required to demand monetary damages in his prison grievance; and (2) does not have to name the responsible defendants in an inmate complaint. *Id*. at 234. Furthermore, the Supreme Court has explicitly stated that the filing of untimely administrative appeals does not satisfy the exhaustion requirement. *Woodford,* 126 S. Ct. at 2382. Accordingly, the plaintiff failed to properly exhaust his administrative remedies with respect to this claim.

### 6. Inmate complaint concerning April 21, 2005.

According to the plaintiff, on April 21, 2005, he was passed up during medication distribution. On April 25, 2005, the plaintiff filed GBCI-2005-13067, complaining: (1) that he was passed up for his stomach medication because the wing officer did not have a tether; (2) he waited for his medication so long that his stomach began to hurt, so he pushed his medication button; and (3) defendant Bates then turned off his medication button. (Gozinske Aff. Ex. 1001 at 1). On July 13, 2005, the ICE dismissed the complaint with modification. (Gozinske Aff. Ex. 1001 at 3). That same day, the reviewing authority dismissed the complaint for the same reason. (Gozinske Aff. Ex. 1001 at 4).

15

On February 16, 2007, the plaintiff appealed the reviewer's decision to the CCE. (Gozinske Aff. Ex. 1001 at 5). The CCE rejected the appeal as untimely on February 17, 2006. (Gozinske Aff. Ex. 1001 at 9).

The plaintiff is required to file inmate complaints and appeals in the time and manner set forth in the Wisconsin Administrative Code. See *Woodford*, 126 S. Ct. at 2382. In the instant action, the plaintiff failed to appeal the dismissal of Inmate Complaint Number GBCI-2005-13067 within 10 days, as required under Wis. Admin. Code § DOC 310.13(1). Thus, the plaintiff failed to properly exhaust his administrative remedies with respect to this claim.

**7.    Inmate complaint concerning the plaintiff's stomach medication**.

The plaintiff contends that, on an unspecified date, defendants John Doe, Sequin, Thorpe and Hertel ceased providing him with stomach medication, which caused him great pain. On May 12, 2005, the plaintiff filed Inmate Complaint Number GBCI-2005-15047, asserting that the medication he had been given to help him keep his food down had been discontinued. (Gozinske Aff. Ex. 1003 at 1). That same day, the ICE recommended that the complaint be dismissed because the plaintiff's medication was intended to be administered for a limited time and because defendants Hertel and Greenwood indicated that the plaintiff was capable of eating. (Gozinske Aff. Ex. 1003 at 3-4). On June 24, 2005, the reviewing authority accepted the ICE's recommendation and dismissed the complaint. (Gozinkse Aff. Ex. 1003 at 5).

16

The plaintiff appealed the reviewer's decision on February 12, 2006. (Gozinske Aff. Ex. 1003 at 6-7). On February 17, 2006, the CCE dismissed the appeal as untimely. (Gozinske Aff. Ex. 1003 at 10).

The plaintiff concedes that his appeal of Inmate Complaint Number GBCI-2005-15047 was untimely, but argues that he was scared to appeal the reviewer's decision because staff would retaliate against him due to his white supremacy beliefs. It is well established, however, that futility "is not an excuse for failing to exhaust." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). Therefore, the plaintiff failed to properly exhaust his administrative remedies with respect to this claim.

**8.     Inmate complaints concerning lack of medication on the weekend.**

**First Inmate Complaint**

The plaintiff maintains that on June 19, and July 29, 2005, defendant Lutsey did not give him enough medication to last through the weekend. On June 20, 2005, the plaintiff filed a complaint stating that he had not been given enough migraine and stomach to last through the weekend. (Gozinske Aff. Ex. 1015). That same day, the ICE returned the complaint to the plaintiff, unfiled, and advised him to attempt to resolve the dispute with defendant Hertel. (Gozinske Aff. Ex. 1016). The plaintiff was advised that he could refile the complaint after consulting with defendant Hertel. *Id.*

Prior to accepting an inmate complaint, the ICE may direct the inmate to attempt to resolve the issue. Wis. Admin. Code DOC § 310.09(4). In the present case, it is

17

unclear whether the plaintiff contacted defendant Hertel to attempt to resolve the issue of his medication running out on the weekend. Regardless, the plaintiff did not refile the June 20, 2005, inmate complaint. Therefore, the plaintiff failed to properly exhaust his administrative remedies with respect to this claim.

### Second Inmate Complaint

On August 2, 2005, the plaintiff filed Inmate Complaint Number GBCI- 2005-23729, asserting that he had not been given enough medicine to last through the weekend. (Gozinske Aff. Ex. 1006 at 1-3). The ICE dismissed the complaint because the plaintiff's medication chart indicated that he did not run out of medication. (Gozinske Aff. Ex. 1006 at 4). On August 22, 2005, the reviewing authority affirmed the dismissal of the complaint. (Gozinske Aff. Ex. 1006 at 5).

The plaintiff appealed the reviewing authority's decision on February 12, 2006. (Gozinske Aff. Ex. 1006 at 6). On February 17, 2006, the CCE dismissed the appeal as untimely. (Gozinske Aff. Ex. 1006 at 10). The Secretary adopted the dismissal on February 20, 2006. (Gozinske Aff. Ex. 1006 at 11).

As discussed, the plaintiff is required to file inmate complaints and appeals in the time and manner set forth in the Wisconsin Administrative Code. *See Woodford*, 126 S. Ct. at 2382. In the instant action, the plaintiff failed to appeal the dismissal of Inmate Complaint Number GBCI- 2005-23729 within 10 days, as required under Wis. Admin. Code

18

§ DOC 310.13(1).  Thus, the plaintiff failed to properly exhaust his administrative remedies with respect to this claim.

**9.**     **Inmate complaints concerning the plaintiff vomiting blood.**

**First Inmate Complaint**

The plaintiff claims that on July 21, 2005, he was throwing up blood and defendants Lehman and Walton delayed medical care for several hours.  On July 25, 2005, the plaintiff filed Inmate Complaint GBCI-2005-22793, complaining that he was spitting up blood and that defendant Walton took more than two hours to get him medical care. (Gozinske Aff. Ex. 1004 at 1).  That same day, the ICE dismissed the complaint because the plaintiff was seen by medical staff on July 22, 2005.  (Gozinske Aff. Ex. 1004 at 3).  On July 25, 2005, the reviewing authority accepted the ICE's recommendation and dismissed the complaint. (Gozinske Aff. Ex. 1004 at 4).

The plaintiff appealed the reviewer's dismissal of Inmate Complaint GBCI-2005-22793 on February 16, 2006.  (Gozinske Aff. Ex. 1004 at 5).  On February 17, 2006, the CCE recommended that the appeal be dismissed as untimely.  (Gozinske Aff. Ex. 1004 at 9).  The Secretary adopted the decision of the CCE and the plaintiff's appeal was dismissed on February 20, 2006.  (Gozinske Aff. Ex. 1004 at 10).

**Second Inmate Complaint**

On July 25, 2005, the plaintiff filed Inmate Complaint Number GBCI-2005-22791, asserting that he told defendant Lehman that he was spitting up blood, but defendant

19

Lehman delayed providing him medical care for two hours. (Gozinske Aff. Ex. 1005 at 1). That same day, the ICE dismissed the complaint because the matter had been previously addressed through the ICRS. (Gozinske Aff. Ex. 1005 at 3).

The plaintiff appealed defendant Perttu's decision on February 12, 2006. (Gozinske Aff. Ex. 1005 at 4). The appeal was dismissed as untimely by defendant Pollard on February 27, 2006. (Gozinske Aff. Ex. 1005 at 6).

### Third Inmate Complaint

On September 6, 2005, the plaintiff filed Inmate Complaint Number GBCI-2005-27905, complaining that, on August 31, 2005, he informed defendants Bouchonville, Gleason and Kaphingst that he was vomiting blood. (Gozinske Aff. Ex. 1007 at ). However, no one provided him any assistance. *Id.* The ICE dismissed the complaint November 11, 2005, because her investigation revealed that the plaintiff did not speak with defendants Bouchonville, Gleason or Kaphingst. (Gozinske Aff. Ex. 1007 at 5-6). Additionally, the ICE found that the responding officer had reasonably responded to the plaintiff's concerns. *Id*. The dismissal was affirmed by the reviewing authority on November 14, 2005. (Gozinzke Aff. Ex. 1007 at 7).

On February 17, 2006, the plaintiff appealed defendant Pollard's decision. (Gozinske Aff. Ex. 1007 at 11). On that same day, the CCE dismissed the appeal as untimely. (Gozinske Aff. Ex. 1007 at 12). Then, on February 20, 2006, the Secretary

20

adopted the CCE's decision to dismiss the plaintiff's appeal as untimely. (Gozinske Aff. Ex. 1007 at 13).

The plaintiff failed to appeal the dismissal of Inmate Complaints GBCI-2005-22793, GBCI-2005-22791 and GBCI-2005-27905 within 10 days, as required under Wis. Admin. Code § DOC 310.13(1). Thus, the plaintiff failed to properly exhaust his administrative remedies with respect to these claims.

In sum, the plaintiff failed to properly exhaust his administrative remedies with respect to the above-mentioned inmate complaints. *See* 42 U.S.C. § 1997e(a). And, inasmuch as exhaustion is a condition precedent to suit, *Dixon,* 291 F.3d at 488, the plaintiff may not pursue any of the claims set forth in his complaint. Therefore, the defendants' motion for summary judgment will be granted.[2]

## IV. PLAINTIFF'S MOTION TO APPOINT COUNSEL

On July 27, 2007, the plaintiff filed a motion for appointment of counsel. Indigent civil litigants have no absolute constitutional or statutory right to be represented by counsel in federal court. *Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992);

---

[2]

The court notes that defendants Bouchonville, Caul, Hammer and Ripely argue that they have not been properly served. The Marshals Service is required to serve process on behalf of individuals who are proceeding *in forma pauperis*, such as the plaintiff in this case. *See* Fed. R. Civ. P. 4(c)(2). "[W]hen the district court instructs the Marshal to serve papers on behalf of a prisoner, the prisoner need furnish no more than the information necessary to identify the defendant. The Marshal's failure to accomplish the task is automatically 'good cause' within the meaning of Rule 4(j)," which is now Rule 4(m). *Sellers v. United States*, 902 F.2d 598, 602 (7th Cir. 1990).

In the present case, it is unclear whether the plaintiff furnished the Marshal with sufficient information to serve defendants Bouchonville, Caul, Hammer and Ripley and, whether there exists good cause warranting an extension of time to effectuate service. Regardless, the plaintiff's action has been dismissed for failure to exhaust.

*McKeever v. Israel*, 689 F.2d 1315, 1318 (7th Cir. 1982). Furthermore, this action has been dismissed. Thus, the plaintiff's motion for appointment of counsel will be denied.

**IT IS THEREFORE ORDERED** that the plaintiff's motion to amend the complaint (Docket # 47) is **granted**.

**IT IS FURTHER ORDERED** that the docket be amended to reflect that defendant Dr. John Doe has been identified as Dr. Richard Heidorn.

**IT IS ORDERED** that the defendants' motion to amend the caption (Docket # 53) is **granted.** The caption shall be amended to reflect that RN Lemens was dismissed as a defendant on November 7, 2006. The record shall reflect that the summons directed to RN Lemens on April 11, 2007, was issued in error.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (Docket # 20) is **granted.**

**IT IS ORDERED** that the plaintiff's motion to appoint counsel (Docket # 48) is **denied**.

**IT IS ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 21st day of August, 2007.

**SO ORDERED,**

s/ Rudolph T. Randa

_____

**HON. RUDOLPH T. RANDA**
**Chief Judge**